## STATE of Delaware

### v.

### Thomas MAGNER, Defendant.

### Def. ID No. 9509007746.

Superior Court of Delaware,
New Castle County.

Submitted: Feb. 3, 1997.
Argued and Decided: Feb. 5, 1997.
Issued: March 7, 1997.

Steven Wood, and Charles Walker, Deputy Attorneys General, Department of Justice, Wilmington, for the State.

Thomas Foley, and Sheryl Rush–Milstead, Wilmington, for the Defendant.

### MEMORANDUM OPINION

ALFORD, J.

This matter is presently before the Court on the State's Motion *in Limine* filed on January 31, 1997, seeking to exclude or limit psychiatric evidence on the issue of extreme emotional distress and Defendant's response filed on January 31, 1997. For the following reasons, the State's motion is denied.

### BACKGROUND

Thomas Magner ("Defendant"), is charged with two counts of Murder First Degree, three counts of Possession of a

Deadly Weapon During the Commission of a Felony and Felony Theft. The charges arise from the death of Mr. Thomas Hedrick on September 8, 1995. The two men were living together at Mr. Hedrick's residence and were involved in a sexual relationship. A few weeks prior to the incident, Defendant vacated the residence at Mr. Hedrick's insistence. On the evening of September 8, 1995, Defendant returned to Mr. Hedrick's residence. Mr. Hedrick refused to allow Defendant to enter. Defendant then forced his way into the residence by kicking in the door. By the time Defendant fled minutes later, Defendant had assaulted Mr. Hedrick and cut his neck, nearly decapitating him.

■ As a defense to the intentional murder charge, Defendant intends to introduce evidence that he committed the killing under the influence of extreme emotional distress. In support of his claim, Defendant intends to offer the testimony of Dr. Stephen Mechanick, a psychiatrist. Dr. Mechanick conducted a psychiatric evaluation of Defendant and prepared a report. He determined that Defendant had the psychiatric diagnoses of adjustment disorder with mixed disturbance of emotions and conduct, alcohol abuse and cocaine abuse. Dr. Mechanick concluded that Defendant committed the killing under the influence of extreme emotional distress. Dr. Mechanick identified the disruption of the relationship and a history of sexual, physical and emotional abuse as the cause of the extreme emotional distress. Defendant proffered this report to the State in anticipation of calling Dr. Mechanick as a witness at trial.[1]

The State proposes that Dr. Mechanick should be precluded from testifying as to whether Defendant was suffering from extreme emotional distress at the time of the killing. The State opines that a psychiatric expert has neither any specialized knowledge as required by Delaware Uniform Rule of Evidence ("D.R.E.") 702 to assist the jury in understanding the legal concept of extreme emotional distress, nor a sufficient basis for expressing an opinion as required by D.R.E. 705. The State further argues that Dr. Mechanick should be precluded from testifying and opining as to Defendant's psychiatric condition because that condition is irrelevant to the issue of whether Defendant was under the influence of extreme emotional distress at the time of the killing.

Defendant contends that the Delaware Rules of Evidence allow psychiatric testimony to prove the existence of extreme emotional distress. In support of this opinion, Defendant argues that the testimony is relevant and will aid the trier of fact to understand Defendant's situation and the circumstances as he understood them to be at the time of the killing. Additionally, it is argued, the testimony will aid the trier of fact's assessment of the reasonableness of the explanation or excuse for the existence of extreme emotional distress. Defendant claims that Dr. Mechanick should be permitted to testify about how the influences in Defendant's life, including childhood episodes of abuse and relationships with older men impacted upon his mental state.

## DISCUSSION

The issues before the Court involve the proper role and scope of expert psychiatric testimony in a case involving the charge of intentional murder where the

---

1. A defendant in a criminal trial is required to notify the State of his or her intention to introduce expert testimony relating to the defendant's mental condition that may bear upon the issue of guilt. Superior Court Criminal Rule 12.2(b) provides in pertinent part:

 If a defendant intends to introduce expert testimony relating to a mental illness, defect, psychiatric disorder or any other mental or emotional condition of the defendant bearing upon the issue of guilt, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney general in writing of such intention and file a copy of such notice with the prothonotary.
 Super.Ct.Crim.R. 12.2(b).

defense intends to prove that Defendant acted under the influence of extreme emotional distress. Specifically, this Court must determine: 1) whether expert psychiatric testimony is admissible to prove that Defendant was acting under the influence of extreme emotional distress; 2) whether expert testimony involving Defendant's psychiatric condition is relevant to the jury's determination of Defendant's extreme emotional distress defense; and 3) whether a psychiatric expert may state his opinion as to whether Defendant was acting under the influence of extreme emotional distress at the time of the killing.

## THE APPLICABLE STATUTES

■ Defendant was charged with first degree murder under § 636 of the Delaware Criminal Code. This section provides, "[a] person is guilty of murder in the first degree when: (1) The person intentionally causes the death of another person. . . ." 11 *Del.C.* § 636(a)(1). The punishment for first degree murder is death or life imprisonment without the benefit of probation, parole or any other type of reduction. 11 *Del.C.* § 4209. A defendant who intentionally causes the death of another person may avoid liability for first degree murder if the intentional killing is committed under the influence of extreme emotional distress.

■ While extreme emotional distress essentially serves as a defense to murder, it is not an absolute defense since it does not relieve the defendant from all criminal responsibility. Instead, extreme emotional distress is a mitigating circumstance reducing first degree murder to manslaughter. Section 632 of the Delaware Criminal Code provides: "[a] person is guilty of manslaughter when: (3) the person intentionally causes the death of another person under circumstances which do not constitute murder because the person acts under the influence of extreme emotional disturbance. . . ." 11 *Del.C.* § 632(3). The mitigating circumstance al-

lows for a significantly lesser degree of punishment. Unlike first degree murder which is punishable by death or life imprisonment, a conviction for manslaughter provides for up to ten years of incarceration. *See* 11 *Del.C.* § 4205.

Extreme emotional distress is discussed in 11 *Del.C.* § 641. It reads:

> The fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by section 636 of this Criminal Code to the crime of manslaughter as defined by section 632 of this Criminal Code. The fact that the accused acted under the influence of extreme emotional distress must be proved by him by a preponderance of the evidence. The accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress. The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as he believed them to be.

11 *Del.C.* § 641. The Code does not include a definition of extreme emotional distress because "any definition would curtail the usefulness of the concept, and [ ] it is a term having a commonly accepted meaning which the jury will understand." Delaware Criminal Code, Commentary § 641 at 198 (1976) [hereinafter Del. Commentary]. Within this statutory framework, the Court turns to the questions before it.

## ADMISSIBILITY OF EXPERT TESTIMONY TO PROVE THE EXISTENCE OF EXTREME EMOTIONAL DISTRESS

■ The decision to admit expert testimony is within the sound discretion of the trial court. *See Moorhead v. State,* Del.Supr., 638 A.2d 52, 56 (1994). This

discretion is limited by the Delaware Uniform Rules of Evidence which provide the applicable guideline the trial court must follow when determining the admissibility of expert testimony. Rule 702 provides, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." D.R.E. 702.

The State contends that Dr. Mechanick should be precluded from testifying because he does not possess any specialized knowledge to assist the jury in understanding whether Defendant was acting under the influence of extreme emotional distress at the time he killed Mr. Hedrick. The State contends that extreme emotional distress is a legal concept and not a psychiatric condition or mental disorder that is subject to medical diagnosis or definition. Accordingly, the State argues, as a medical doctor and psychiatrist, Dr. Mechanick can offer no specialized knowledge or experience to assist the jury in understanding the legal concept of extreme emotional distress. The Court disagrees with the State's position. ·

Essentially, the State argues that the jury is equipped to make a judgement on the existence of extreme emotional distress based on their common knowledge and experience. Indeed, the commentary to the Code states that extreme emotional distress is a term having a commonly accepted meaning the jury will understand. Del. Commentary § 641 at 198. However, the view that a court must exclude expert testimony if the subject matter is within the general competence or comprehension of the average juror is, as one commentator explained:

> incompatible with the standard of helpfulness expressed in Rule 702. First, it assumes wrongly that there is a bright line separating issues within the comprehension of jurors from those that are not. Second, even when jurors are well equipped to make judgments on the basis of their common knowledge and experience, experts may have a specialized knowledge to bring to bear on the same issue which would be helpful.

3 Jack B. Weinstein et al., Weinstein's Evidence, ¶ 702[02], at 702–20–21 (1996). *See also* 1 Kenneth S. Broun, et al., McCormick on Evidence, § 13 at 54 (John W. Strong ed. 4th ed.1992).

The key to the admissibility of expert testimony is determining whether it will "assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." D.R.E. 702; *Moorhead,* 638 A.2d at 57. The Rule provides a helpfulness standard and as indicated in the advisory committee's note to Federal Rule of Evidence 702:

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

Fed.R.Evid. 702 (advisory committee note) (quoting Ladd, *Expert Testimony,* 5 Vand. L.Rev. 414, 418 (1952)). If an expert can provide helpful insight or add to the trier's of fact understanding of the issue, the expert's testimony is admissible pursuant to Rule 702. In applying this principle when determining the helpfulness of expert testimony, the Court should consider factors such as (1) the jury's knowledge presently existing about the subject of the proposed testimony and (2) the particular facts of the case. *See* 3 Weinstein's Evidence, ¶ 702[02], at 702–23. If the Court finds that the testimony will not benefit or add to the jury's knowledge of the issue, the Court may exclude such testimony. For instance, expert testimony that is unhelpful will be excluded under Rule 402 if it is not relevant. D.R.E. 402; *Moorhead,* 638 A.2d at 56. *See also* 7 Wigmore,

Evidence § 1918 (Chadbourn rev.1978). Additionally, expert testimony that is unhelpful may be excluded under Rule 403 if the probative value of the testimony is substantially outweighed by the (i) danger of unfair prejudice; (ii) if the testimony confuses the issues or misleads the jury; or (iii) considerations of undue delay, waste of time or needless presentation of cumulative evidence. D.R.E. 403.

■ It should be noted that Delaware courts have long admitted expert psychiatric testimony to prove the existence of extreme emotional distress in a first degree murder case. *See, e.g., Ross v. State,* Del.Supr., 482 A.2d 727 (1984), *cert denied,* 469 U.S. 1194, 105 S.Ct. 973, 83 L.Ed.2d 976 (1985), *Boyd v. State,* Del.Supr., 389 A.2d 1282 (1978), *State v. Hamilton,* Del. Supr., 406 A.2d 879 (1974), *State v. Hodges,* Del.Super., Cr.A. No. 95–12–0405, Goldstein, J. (Sept. 10, 1996) (ORDER & OPINION), *State v. Bailey,* Del.Super., No. IK79–05–0085R1, Ridgely, P.J., (August 23, 1991) (OPINION). Although a Delaware court has never explicitly held that psychiatric testimony is admissible on the issue of extreme emotional distress, the language of these cases implies that such testimony is relevant and not otherwise inadmissible. *Accord, People v. Patterson,* 39 N.Y.2d 288, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1976), *aff'd,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *People v. Shelton,* N.Y.Sup.Ct., 88 Misc.2d 136, 145, 385 N.Y.S.2d 708 (1976). *But cf. Snowden v. State,* Del.Supr., 677 A.2d 33 (1996) (opining no expert testimony is required to establish extreme emotional distress as a mitigating *circumstance* to first degree murder) (emphasis added). Additionally, the Code places the burden of presenting credible evidence demonstrating the existence of extreme emotional distress upon the defendant. 11 *Del.C.* §§ 303, 641. Since defendants "may demonstrate mental states in their chosen manner," *Snowden,* 677 A.2d at 38, psychiatric testimony demonstrating the existence of extreme emotional distress may be admissible if not precluded by D.R.E. 402 or 403.

Turning to the case at bar, Dr. Mechanick's testimony is admissible under D.R.E. 702. Dr. Mechanick is expected to testify how certain circumstances in Defendant's life affected his mental and emotional state at the time of the killing. His testimony will assist the jury in understanding whether Defendant had a "reasonable explanation or excuse for the existence of the extreme emotional distress." Dr. Mechanick's testimony will also assist the jury in understanding Defendant's situation at the time of the murder. This is relevant since the jury must evaluate the reasonableness of the explanation or excuse from the "viewpoint of a reasonable person in the accused's situation under the circumstances as he believed them to be." *See* 11 *Del.C.* § 641. The jury has no knowledge of the subject of Dr. Mechanick's testimony. The jury knows little about Defendant's background and arguably lacks the expertise to draw inferences about how certain events may have affected Defendant's emotional state. Expert psychiatric testimony is helpful to the jury's understanding of Defendant's circumstances and emotional state.

## RELEVANCE OF DEFENDANT'S PSYCHIATRIC CONDITION TO THE EXTREME EMOTIONAL DISTRESS DEFENSE

■ Dr. Mechanick determined that Defendant had the psychiatric diagnosis of adjustment disorder with mixed disturbance of emotions and conduct, alcohol abuse and cocaine abuse. The State contends that evidence of such psychiatric disorders is not relevant or applicable to Defendant's claim of extreme emotional distress. Defendant argues that his psychiatric condition is relevant insofar that it contributes to his "situation." The ambiguous formulation of § 641 does not state what factors the jury should properly consider when determining whether Defendant acted under the influence of extreme emotional distress. A review of the statu-

tory history provides a helpful basis into understanding the breadth of the statute.

## STATUTORY HISTORY AND INTERPRETATION OF § 641

Section 641 was enacted on July 6, 1972, as part of the general revision of the Delaware Criminal Code which became effective on April 1, 1973. *See* 58 Del.Laws., c. 497, § 1. The extreme emotional distress defense was established as a substitute to Delaware's common law "provocation" doctrine. *See Moore v. State,* Del.Supr., 456 A.2d 1223, 1225 (1983); *Fuentes v. State,* Del.Supr., 349 A.2d 1, 5 (1975); Del. Commentary §§ 632, 641. The most important function of the new formulation is to provide some subjective analysis to the "rigorous objectivity of the prevailing law. . . ." *See* Del. Commentary § 641 at 197. Under the prior law, the sufficiency of the provocation was determined under a reasonable man standard. *Id.* Mitigation rested on whether the provocative circumstances were sufficient to deprive a reasonable or ordinary man of self-control. *Id.* Factors contributing to the defendant's particular situation, such as temperament, infirmity of the body, infliction of the mind or the existence of cooling off time were historically ignored. *Id.* The new formulation sought a middle ground where the analysis is not purely objective but allows the fact finder to consider some individual peculiarities that contributed to the extreme emotional distress. *Id.* at 197–98. As explained in the Code commentary:

> We say that there must be a "reasonable explanation or excuse" for the extreme disturbance of the actor; and that reasonableness of any explanation or excuse "shall be determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be." There will be room, of course, for interpretation of the breadth of meaning carried by the word "situation", precisely the room needed in our view. There will be room for argument as to the reasonableness of the explanations or excuses offered; we think that argument is needed in these terms. The question in the end will be whether the actor's loss of self-control can be understood in terms that arouse sympathy enough to call for mitigation in the sentence.

Del. Commentary § 641 at 198.

The new formulation constructs a bifurcated analysis consisting of both an objective and a subjective inquiry. The question of whether "there is a reasonable explanation or excuse for the existence of the extreme emotional distress" preserves an objective inquiry and prevents an over-individualization of the legal standard. *See Ross,* 482 A.2d at 738; Model Penal Code § 210.3 at 62 (1980). The defendant's subjective mental state however, is important insofar that "the reasonableness or excuse shall be determined from the *viewpoint of a reasonable person in the accused's situation under the circumstances as the accused believed them to be.*" *See* 11 *Del.C.* § 641 (emphasis added). As discussed above, inquiry into the "actor's situation" provides latitude for the trier of fact to consider special aspects of the defendant's situation that are relevant to the issue of culpability. *See* Model Penal Code, § 210.3 at 62–63.

Within this statutory framework, there exists little accumulated precedent that offers doctrinal insight into what factors should be considered when determining whether a defendant was acting under the influence of extreme emotional distress at the time of a murder. The Supreme Court of Delaware did limit the permissible factors that may be considered in *Moore v. State,* 456 A.2d at 1224.

In *Moore,* the victim was killed by a shotgun blast to his chest during an armed robbery of his home. *Id.* at 1224. The defendant attempted to raise the extreme emotional distress defense to the felony murder charge. *Id.* at 1224. The Court stated that the defense was not available in felony murder situations. *Id.* at 1225.

The Court expressed that although "extreme emotional distress was meant to sweep away the rigid rules that limited provocation to defined circumstances, it was not designed to allow mitigation based on the defendant's emotional distress 'regardless of the nature of the cause.'" *Id.* at 1225 (citing Del.Commentary § 641 at 197). As explained by the Court:

> [T]he event which triggers the emotional disturbance must be something external from the accused and cannot have been brought about by the accused's own mental disturbance. Under this formulation, if the accused has intentionally, knowingly, recklessly or negligently brought about his own mental disturbance extreme emotional distress is simply not applicable.

*Id.* at 1226. Because the defendant brought about the mental disturbance by participating in the armed robbery, the Court ruled that the extreme emotional distress defense was not available. *Id.*

▮▮▮ The Delaware Supreme Court's holding in *Moore* provides that implicit in the concept of a "reasonable explanation" for the extreme emotional distress is the idea that the emotional disturbance must have been triggered by provocation, an event or a situation for which the offender was not culpably responsible. *See* Model Penal Code § 210.3 at 64 (1980). Accordingly, much like implicating oneself in a crime cannot serve as a "reasonable explanation" for the emotional disturbance, neither should voluntary drug or alcohol induced emotional disturbance. *Cf.* 11 *Del.C.* §§ 421, 422, 424 (stating that voluntary intoxication is no defense to any criminal charge). Thus, to the extent Defendant's mental state is attributable to alcohol or drug use, it is not relevant to the trier's of fact determination of whether Defendant acted under the influence of extreme emotional distress. *See Hodges,* Cr.A. No. 95–12–0405.

What is less clear is whether Defendant's psychiatric condition, independent of his drug and alcohol use, may be prop-erly considered. In Dr. Mechanick's psychiatric evaluation of Defendant, he reported that Defendant was sexually, physically and emotionally abused as a child. According to Dr. Mechanick, throughout Defendant's life, he developed a pattern of victimization by older men who took advantage of his emotional neediness. Defendant sought support and nurturing from these older men in exchange for a sexual relationship. Dr. Mechanick opined that the relationship between Defendant and Mr. Hedrick fit this pattern. He further opined that, in addition to the physical and emotional abuse he suffered as a child, Defendant's sexual history with older men and his relationship with Mr. Hedrick contributed to his psychiatric condition.

No Delaware Supreme Court case squarely addresses whether this type of evidence relating to a defendant's psychiatric condition is admissible to support the extreme emotional distress defense. The Court finds persuasive the view espoused in the seminal case of *People v. Patterson,* 39 N.Y.2d 288, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1976), *aff'd,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977):

> The purpose of the extreme emotional disturbance defense is to permit the defendant to show that his actions were caused by a *mental infirmity not arising to the level of insanity,* and that he is less culpable for having committed them. The opportunity opened for mitigation differs significantly from the traditional heat of passion defense. Traditionally, an action taken under the heat of passion meant that the defendant had been provoked to the point that his "hot blood" prevented him from reflecting upon his actions. Furthermore, the action had to be immediate, for if there was time for "cooling off", there could be no heat of passion. An action influenced by an extreme emotional disturbance is not one that is necessarily so spontaneously undertaken. Rather, it may be that a significant mental trauma has af-

fected a defendant's mind for a substantial period of time, simmering in the unknowing subconscious and then inexplicably coming to the fore. [The new formulation] can be explained by the tremendous advances made in psychology since 1881 and a willingness on the part of the courts, legislators, and the public to reduce the level of responsibility imposed on those whose mental capacity has been diminished by mental trauma....

*Patterson*, 383 N.Y.S.2d 573, 347 N.E.2d at 908. In *Boyd*, the Delaware Supreme Court explicitly approved this concept of extreme emotional distress. *See* 389 A.2d at 1288 (stating "[w]e agree with the concept as elicited in *Patterson* ... "). Pursuant to *Patterson* and *Boyd*, the Court finds that evidence relating to Defendant's psychiatric condition caused by years of abuse is an individual characteristic that is relevant to an assessment of his conduct. *See* Model Penal Code § 210.3 at 73. This is not to say that all mental infirmities and abnormalities are relevant, but to the extent that Defendant did not bring about the sexual, emotional and physical abuse that caused his mental disturbance, it is relevant to whether he suffered under extreme emotional distress at the time of the killing for two reasons.

■ First, expert testimony regarding Defendant's psychiatric condition or "mental infirmity not arising to the level of insanity" allows the trier of fact to discern the "accused's situation." *Accord New York v. Casassa*, 49 N.Y.2d 668, 427 N.Y.S.2d 769, 404 N.E.2d 1310, 1315–17 (1980). While not all individual peculiarities are relevant, certain subjective, internal circumstances of Defendant may be explored in order to understand his situation. *See* Del.Commentary § 641 at 197. Defendant's psychiatric condition is material in this case since the causes of his mental infirmity arguably mirrored his personal situation at the time of the murder. The defense argues that Defendant was emotionally manipulated and ultimate-

ly rejected by Mr. Hedrick and this caused the extreme emotional distress. While this rejection may not cause extreme emotional distress in a reasonable person, the analysis must be conducted from a reasonable person in Defendant's situation. *See* 11 *Del.C.* § 641. The history of sexual, physical and emotional abuse, especially at the hands of older men, is relevant to ascertaining Defendant's subjective situation at the time of the murder.

Second, the information is relevant to demonstrate the existence of a reasonable excuse or explanation for the existence of extreme emotional distress. The Delaware Supreme Court has recognized that the trauma that affects the defendant's mind and causes the existence of extreme emotional distress may occur over "a substantial period of time, simmering in the unknowing subconscious and then explicitly [rise] to the fore." *See Ross*, 482 A.2d at 737–38 (quoting *Boyd*, 389 A.2d at 1288). Evidence of Defendant's psychiatric condition and his history of abuse may be used to demonstrate that he suffered from significant mental trauma that affected his mind over along period of time; and that this history combined with the recent events between Defendant and Mr. Hedrick are relevant to Defendant's reasonable explanation or excuse for the existence of extreme emotional distress.

## EXPERT OPINION ON ULTIMATE ISSUE

■ The State contends that Dr. Mechanick should be precluded from testifying that Defendant was under the influence of extreme emotional distress at the time of the killing. The State argues that extreme emotional distress is a legal concept defined by statute and it is not a psychiatric or mental condition. The State asserts that an expert witness may not draw legal conclusions since this would essentially invade the province of the jury. Defendant asserts that testimony in the form of an opinion is not objectionable merely because it embraces an ultimate

issue of fact. Defendant argues that the State typically offers expert testimony that embraces a legal conclusion; e.g., in drug cases to opine that the quantity of the seized drugs or the manner that drugs are packaged proves a defendant is guilty of Possession with Intent to Deliver.

The State's position corresponds with the so-called "opinion rule" or "ultimate issue" which is rooted in early common law. Generally, the doctrine provides that an expert is not permitted to state an opinion, conclusion or inference where the trier of fact could make its own deductions. *See generally* 7 Wigmore, Evidence § 1918. The opinion rule was specifically abolished with the adoption of the Federal Rules of Evidence in 1975. *See* Pub.L. No. 89–110, 88 Stat.1926. As explained in the advisory committee's note to Rule 704:

> The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information. The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric." Efforts to meet the felt needs of particular situations led to odd verbal circumlo-

cutions which were said not to violate the rule . . . .

Fed.R.Evid. 704 advisory committee's note. D.R.E. 704, which was modeled after the Federal Rule that abolished the opinion rule, provides "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." D.R.E. 704. Simply stated, a witness may state a conclusion, draw an inference or give an opinion so that the trier of fact may receive the full benefit of the expert's judgment.[2]

The Federal Rules have limited an expert's testimony regarding the mental state of a defendant. *See* Fed.R. of Evid. 704(b). Federal Rule of Evidence 704(b) precludes an expert witness from testifying whether a defendant did or did not have the mental state that is an element or a defense to a crime.[3] The prohibition was enacted in part "to eliminate the 'confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions' as to the ultimate legal issue of a defendant's [mental state]." 3 Weinstein's Evidence ¶ 704[03], at 704–17 (citing S.Rep. No. 98–225, 98th Cong., 1st Sess. 230). Delaware, however, has not adopted this rule but allows expert psychiatric testimony regarding a defendant's mental state that may serve as a defense. *See* 11 *Del.C.* § 402(b) (allowing psychiatric testi-

---

2. A troublesome area of the law is where the expert is called upon to give an opinion that involves a legal standard. *See* 3 Weinstein's Evidence ¶ 704[02], at 704–12. Rather than entering the quagmire and attempting to untangle the conflicting precedents, the Court is satisfied that an expert's opinion regarding the existence of extreme emotional distress does not implicate a legal conclusion. Although the Criminal Code provides for the defense, it does not define the term "extreme emotional distress." Rather, the Code allows the jury to draw from the term's commonly accepted meaning. Since no legal definition exists, an psychiatric expert's opinion regarding the defendant's situation and mental state is helpful to the jury in determining whether the accused acted under the influence of extreme emotional distress.

3. As a response to the acquittal of John Hinckley on charges stemming from his assassination attempt of President Reagan, Congress passed the Insanity Defense Reform Act of 1894. 18 U.S.C. § 17 (1988). *See* Weinstein's Evidence ¶ 704[03]. Federal Rule of Evidence 704 was amended by this Act to provide for subsection (b) which states:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed.R.Evid. 704(b).

mony regarding the "insanity" and "guilty but mentally ill" defenses). The Court holds that unless and until a prohibition is established by the General Assembly, an expert may state his or her opinion whether the defendant was acting under the influence of extreme emotional distress at the time of a killing.

Although D.R.E. 704 allows opinions on ultimate issues, "[t]he abolition of the ultimate issue rule does not lower the bars so as to admit all opinions." *See* Fed.Rule Evid. 704 advisory committee's note. The expert's testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. D.R .E. 702. If the testimony is not helpful or is superfluous, it will be excluded. Additionally, the testimony will be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. D.R.E. 403.

 It is also important to note that if a medical expert states his conclusion whether a defendant was "acting under the influence of severe emotional distress at the time of a murder," the jury is not bound by this expert's testimony. *See Hamilton,* 406 A.2d at 880. A jury may always disregard the testimony of a witness and draw its own conclusions. D.R.E. 705 reduces the impact of an opinion that is not sufficiently supported by the facts or reliable data by requiring the witness to identify the facts and data which serve as a basis for his opinion and the reason for his opinion. D.R.E. 705. Therefore, unlike the danger recognized in early common law where a witness would supply the jury with no information other that the witness' view of how its verdict should read, *see* 7 Wigmore, Evidence § 1917, the jury will have adequate material with which to evaluate an opinion. The protection afforded by D.R.E. 705 assures that the underlying facts and data that support the expert's opinion will be put before the jury. With an effective voir dire, testimony of an expert may be excluded if the expert does not have a suffi-

cient basis for expressing the opinion. *See* D.R.E. 705(b); *Re v. State,* Del.Supr., 540 A.2d 423, 426 (1988). The opponent of the testimony may also expose any unsupported or illogical inferences via effective cross-examination. Ultimately, it is a question of what weight the trier of fact accords to the opinion or conclusion, not a question regarding the admissibility of the testimony.

## CONCLUSION

 Although never explicitly stated in Delaware precedent, the Court finds that when a Defendant is charged with intentional murder, expert psychiatric testimony is admissible to prove the mitigating circumstance of extreme emotional distress. In this case, evidence of alcohol and cocaine abuse is not admissible to support Defendant's claim that he acted under the influence of extreme emotional distress. However, to the extent that Defendant's mental state may have been affected by other factors such as his lifelong sexual abuse by older men, it is admissible to prove that Defendant acted under the influence of extreme emotional distress. The Court also holds, pursuant to the Delaware Uniform Rules of Evidence, that a psychiatric expert may state his or her conclusion as to whether a defendant acted under the influence of extreme emotional distress at the time of the killing.

Accordingly, and for the foregoing reasons, the State's Motion *in Limine* is **DENIED.**

**IT IS SO ORDERED.**