Michael B. BRIDGES, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 116, 1996.

Supreme Court of Delaware.

Submitted: Jan. 21, 1998.
Decided: Feb. 11, 1998.
Rehearing En Banc Denied March 18, 1998.

Joseph A. Gabay, Wilmington, for Appellant.

Sam Glasscock, III, Deputy Attorney General, Department of Justice, Georgetown, for Appellee.

Before WALSH, HOLLAND, and BERGER, JJ.

WALSH, Justice:

In this appeal from the Superior Court, Appellant, Michael Bridges ("Bridges"), seeks reversal of his conviction of manslaughter. At trial, a jury acquitted Bridges of an indicted charge of second degree murder but convicted him of manslaughter in the death of his infant son. We conclude that Bridges' failure to make a contemporaneous objection to certain character evidence precludes assertion of a claim or error on appeal and that admission of the character evidence did not create prejudice. We further conclude that Bridges was properly sentenced as an habitual offender, notwithstanding the State's position in previous plea negotiations. Accordingly, we affirm the conviction.

## I.

The evidence presented by the State at trial portrayed the following facts: On October 24, 1994, the woman with whom Bridges co-habitated, Kimberly Peterson ("Peterson"), gave birth to their son, Michael Bridges ("Michael"). At first, Michael was a healthy baby but, at about four weeks of age, he became ill and fussy. On December 6, 1994, Bridges, who was angered by Michael's crying, yelled at Peterson to "shut the baby up." When Michael would not stop crying, Bridges grabbed the baby by the throat and shook him until his arms and legs were flop-ping. Bridges then threw Michael at Peterson, and the baby's head forcefully struck her elbow. When Peterson picked up Michael, he was limp and not breathing. Bridges administered CPR, but Michael did not regain consciousness. Both parents rushed Michael to the hospital where he was diagnosed with Shaken Baby Syndrome. Michael died, in February, from causes stemming from those injuries.

At Bridges' trial, the State, in its opening statement, made references to Bridges' bad character to which defense counsel objected. The trial court permitted the references, reminding the jury that statements made during opening statements are not evidence. During its case-in-chief, the State introduced testimony concerning Bridges' bad character. Defense counsel did not contemporaneously object to the introduction of this evidence. The State also introduced into evidence, over defense objection, two photographs of Michael, taken at the hospital the day after he was injured. These photographs depicted Michael's injuries and the invasive medical treatment he was undergoing.

Peterson pleaded guilty to manslaughter and agreed to testify against Bridges. During her testimony, the State sought to elicit evidence that, in the weeks preceding Michael's injuries, Bridges had beaten and shaken the baby and had directed Peterson not to interfere with this "discipline" of Michael on threat of physical violence. This evidence of prior bad acts by Bridges was proffered pursuant to D.R.E. 404(b).[1] Defense counsel objected to the introduction of this evidence. The trial court, after performing a Getz [2] analysis, concluded that the proffered evidence was relevant, submitted for a proper purpose, proved by plain, clear and conclusive evidence, and that its probative value was not substantially outweighed by the danger of unfair prejudice. The evidence was then admitted.

---

1. D.R.E. 404(b) provides

   [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of mo-tive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

2. See Getz v. State, Del.Supr., 538 A.2d 726 (1988).

The State also offered evidence, through Peterson, that Bridges was not financially supportive of her and the baby, that he was generally uncaring about the baby's condition, and that he was often absent from the home.

## II.

Bridges objected both to the prosecutor's statements made during opening remarks and to the admission of testimony concerning Michael's prior beatings and shakings. We review the trial court's rulings on those issues for abuse of discretion. *Moorhead v. State*, Del.Supr., 638 A.2d 52, 54 (1994). Bridges made no contemporaneous objection to the admission of bad character evidence in the State's case-in-chief. We, thus, review that issue for plain error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Wainwright v. State*, Del. Supr., 504 A.2d 1096, 1100, *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

Bridges contends that the Superior Court erred in all of its rulings pertaining to admission of evidence of bad character and prior bad acts pursuant to D.R.E. 404. Bridges argues that the cumulative effect of the Superior Court's error in admitting this evidence prejudiced the jury against him and interfered with his right to a fair trial.

Bridges never disputed the underlying facts upon which he was charged with second degree murder. The issue at trial was whether Bridges acted with a "recklessness [that] manifested a cruel, wicked and depraved indifference to human life." *Moorhead*, 638 A.2d at 54. The jury, even after hearing the evidence of bad character and prior bad acts, found that he had not. Thus, Bridges cannot reasonably be heard to argue that he was prejudiced by the admission of evidence bearing on a state of mind reflective of "depraved indifference to human life."

Arguably, it was error for the trial court to permit the prosecution to comment negatively on Bridges' character in the opening statement and to permit this evidence to be introduced in the prosecution's case-in-chief. In particular, we note our concern that the Superior Court's "curative" ruling addressed to the State's reference to Bridge's bad character during opening statements was ineffectual and missed the point of the objection. When counsel, in an opening statement to the jury, refers to evidence which is of doubtful admissibility, the court should not permit such references unless an offer of proof supports admissibility. Because the mere mention of inadmissible evidence may create prejudice, it is no remedy to caution the jury that counsel's statements are not evidence.

In view of the lack of contemporaneous objection and Bridges' admission to the underlying conduct, however, any such error was harmless. Bridges' confession, admitted in the State's case without objection, in which he admitted forcefully throwing the baby, proved sufficient evidentiary basis to support a manslaughter verdict. *See Howard v. State*, Del.Supr., 704 A.2d 278, 282 (1998); *Nelson v. State*, Del.Supr., 628 A.2d 69, 77 (1993); *Johnson v. State*, Del.Supr., 587 A.2d 444, 451 (1991). Accordingly, the rulings of the Superior Court are affirmed.

## III.

Bridges also claims error in the trial court's admission of certain photographs depicting Michael during medical treatment. We review the Superior Court's admission of these photographs for abuse of discretion. *Young v. State*, 407 A.2d 517, 522 (1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980).

Bridges argues that the Superior Court abused its discretion by admitting the photographs of Michael because the photographs "possessed no evidentiary value nor did they meet any evidentiary need." Bridges contends that the photographs were cumulative of other evidence, irrelevant and inflammatory. The State responds that the photographs were relevant to the issue of the cruel, wicked and depraved nature of Bridges actions. Further, the State contends that the probative value of the photographs on that issue was not outweighed by any potential prejudice to Bridges. The State argues

that Bridges was not prejudiced by the admission of the photographs because the jury found that his actions were not cruel, wicked or depraved.

The Superior Court did not abuse its discretion by admitting the photographs. Simply because photographs of a victim, like other evidence often presented in a murder trial, are gruesome or unpleasant, does not render them prejudicial. *See Shantz v. State,* Del.Supr., 344 A.2d 245, 246 (1975). The trial court, after hearing argument by the parties, determined that the probative value of the photographs outweighed the potential prejudice to Bridges. *See* D.R.E. 403. Further, the trial court concluded that the testimony presented at trial was not an adequate substitute for the photographs. *See Casalvera v. State,* Del.Supr., 410 A.2d 1369, 1372–73 (1980). Such decisions are clearly within the discretion of the trial court, and its ruling is affirmed.

## IV.

■ Finally, we are asked to determine if the Superior Court abused its discretion by not sanctioning the State for the discovery violation arising from its delayed disclosure of Bridges' Florida felony conviction, in violation of Super.Ct.Crim.R. 16(a)(1)(B).[3] *Doran v. State,* Del.Supr., 606 A.2d 743, 745–46 (1992).

Before trial, Bridges requested and received from the State a copy of his criminal record, which disclosed two prior felony convictions in Delaware.[4] Bridges declined a plea bargain under which he would have pleaded guilty to manslaughter and would not have been sentenced as an habitual offender. Instead, Bridges elected to be tried for second degree murder and was convicted of manslaughter. A presentence investigation revealed an additional felony conviction in Florida.[5] Subsequently, Bridges was sentenced as an habitual offender, pursuant to 11 *Del.C.* § 4214(a), to a term of thirty years.[6]

Bridges argues that the failure of the State to uncover and to disclose his felony conviction in Florida subjected him to habitual offender status upon conviction of manslaughter in the present case. He contends that, had he been properly informed of the Florida conviction, he would have accepted the State's plea bargain offer, under which he would not have been sentenced as an habitual offender. He does not, however, challenge the validity of the three prior convictions. Citing several cases from the District of Columbia, Bridges argues that he is entitled to be re-sentenced and that, upon resentencing, the Superior Court may not consider the Florida felony conviction.

The Superior Court did not err by sentencing Bridges as an habitual offender. Given the obvious difference in rules governing habitual offender status, Bridges' reliance on District of Columbia cases is misplaced. *Compare* 11 *Del.C.* §§ 4214(a), 4215(b) *with* D.C.Code § 23–111(a). Further, if it be assumed that the State's discovery response was inadequate, Superior Court Criminal Rule 16 precludes the sanction that Bridges seeks. Super.Ct.Crim.R. 16(d)(2).[7] In any event, Bridges was not prejudiced by the State's discovery violation. Whether Bridges

3. Super.Ct.Crim.R. 16(a)(1)(B) provides that

   [u]pon request of the defendant, the state shall furnish the defendant with such copy of the defendant's prior criminal record, if any, as is within the possession, custody, or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney general.

4. Bridges was convicted of unlawful sexual intercourse in 1992 and of burglary in 1988.

5. Bridges was convicted of burglary in 1989.

6. 11 *Del.C.* § 4214(a) provides:

   Any person who has been 3 times convicted of a felony ... under the laws of this State, and/or any other state, ... and who shall thereafter be convicted of a subsequent felony of this State is declared to be an habitual criminal, and the court in which such fourth and subsequent conviction is had, in imposing the sentence, may in its discretion, impose a sentence up to life imprisonment upon the person so convicted....

7. Super.Ct.Crim.R. 16(d)(2) provides that "[f]ailure of the State to comply with Paragraph B of Subdivision (a)(1) of this Rule shall not prohibit the introduction or consideration of a defendant's prior conviction in a sentencing proceeding."

had accepted the plea offer or had been convicted by a jury, the Florida conviction would have become known through the pre-sentence report, and he would have been subjected to habitual offender status. 11 *Del.C.* § 4215(b). Thus, the State's discovery violation, if any, subjected Bridges to the possibility of no more severe a sentence than that to which he subjected himself by choosing to be tried for second degree murder. Consequently, the sentence of the Superior Court was correct.

Accordingly, we AFFIRM the appellant's conviction and sentence.